## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your Affiant, Hunter D. Nelson, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), having been duly sworn, state as follows:

1. I have employed by the Somerset Police Department (SPD) for approximately eleven (11) years as a sworn police officer and narcotics detective. During this time my primary responsibilities were patrol duties and investigating street- to mid-level drug trafficking and related crimes.

2. As a DEA TFO, I am a law enforcement officer of the United States, within the meaning of 18 U.S.C. § 250(7), and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C § 2516. I have been a DEA TFO for approximately three (3) years.

3. In addition to the Department of Criminal Justice Department academy, I have received training in the investigation of drug conspiracy investigations, money laundering violations, undercover operations, and the use of electronic devices, to include wireless/cellular telephones and social media platforms, in connection with the commission of drug offenses.

4. Through my law enforcement experience, I have participated in numerous state and federal drug trafficking investigations. In so doing, I have been involved with the interviewing/debriefing of cooperating witnesses (CWs), confidential sources of information (SOIs), and defendants regarding the *modus operandi* of drug traffickers. I have also participated in investigations which utilized wire and electronic monitoring, pen registers/trap and trace (pen/trap) devices, telephone toll analyses, document analyses, witness interviews, surveillance, controlled purchases of drugs, the execution of both federal and state search warrants, and the consensual searches of persons, premises, and vehicles utilized by drug traffickers.

5. As a result of my training and experience, I am familiar with Federal criminal laws and know that it is a violation of:

   18 U.S.C. § 922(g)(1), for any person, who has been convicted of a crime punishable by a term of imprisonment exceeding one year, to possess a firearm that has traveled in or affected interstate and/or foreign commerce;

   18 U.S.C. § 924(c), for any person to possess a firearm in furtherance of a drug trafficking crime for which they may be prosecuted in a Court of the United States; and

21 U.S.C. § 841(a)1), to possess with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

6. This affidavit is being submitted in support of a criminal complaint and request for an arrest warrant alleging that Joseph DITTO did knowingly and intentionally possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine (meth), a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), and that he also possessed a firearm in furtherance of this same drug trafficking offense, in violation of 18 U.S.C. § 924(c). It is also being submitted in support of a criminal complaint and request for an arrest warrant alleging that Nikka DYKES, having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did unlawfully possess a firearm, in violation of 18 U.S.C. § 922(g)(1).

7. The information contained herein is based on my own knowledge of the investigation, as well as the knowledge of other federal, state, and local law enforcement personnel involved in the same. Moreover, this affidavit does not include every fact known to me, but that which is necessary to establish probable cause in support of the proposed criminal complaint and arrest warrant.

8. On January 8, 2026, Somerset Police Department (SPD) Officers Logan Crabtree and Joshua England received a dispatch call to respond to the Dollar Tree at 490 E Hwy 80 in Somerset, KY. Dispatch advised a male and female subject, both of whom were believed to be under the influence, had attempted to exit the store with unpaid merchandise.

9. Ofc. Crabtree and Ofc. England arrived at the Dollar Tree and encountered Joseph DITTO in the parking lot of the business. The officers approached DITTO to further investigate the complaint and engage in a consensual encounter. Ofc. Crabtree asked DITTO what was going on. DITTO advised that he had mistakenly pushed a cart out of Dollar Tree that he thought his "old lady" – referencing his girlfriend, Nikka DYKES – had paid for. The alarm for DITTO's vehicle was going off and DITTO advised that DYKES was still in the store with the keys.

10. Ofc. Crabtree then went into the store to get DYKES to come out because the store wanted her off of the property due to the alleged shoplifting incident. Ofc. Crabtree located DYKES and escorted her to the car while Ofc. England stood by with DITTO. DYKES opened the car door and Ofc. Crabtree could immediately smell a very strong odor of marijuana coming from inside the vehicle. While DYKES was looking for the keys for the vehicle, Ofc. Crabtree observed a box of ammunition in plain sight.

11. Ofc. Crabtree asked DITTO if there were any firearms in the vehicle. Ofc. Crabtree observed an immediate and obvious change in DITTO's demeanor in response to this question. DITTO did not answer the question about the firearm and merely shook his head "no" in response. Ofc. England then noticed the rear sights of a firearm sticking out of DITTO's front hoodie pocket. DITTO was placed in handcuffs for officer safety while one of the officers removed the firearm from the hoodie. While removing the firearm, Ofc. Crabtree noticed a large quantity of a crystalline substance, which he believed to be meth based on his training and experience, in a bag in the same pocket. After securing the loaded firearm from DITTO's hoodie, officers removed the bag of suspected meth from his pocket. The meth seized from DITTO's person weighed approximately 339 grams. Based on my training and experience, this is a distribution quantity of meth and an aggravated drug quantity under federal law.

12. Officers ran a criminal history search on DITTO which showed that he had multiple felony convictions, including a 2011 conviction for felony drug trafficking in federal court.

13. Officers ran the vehicle's registration, and it came back as being registered to both DITTO and DYKES. They then conducted a probable cause search of the vehicle based on the marijuana smell, as well as the seizure of the firearm and drugs from DITTO's person. Officers located approximately 14.6 grams marijuana and another firearm in the vehicle. DYKES provided a post-*Miranda* statement to officers in which she admitted to ownership of the firearm and marijuana found in the vehicle.

14. Officers ran a criminal history search on DYKES which showed that she had prior felony convictions for Burglary 3rd Degree in 2016 and Possession of a Controlled Substance, First Degree, First Offense (Methamphetamine) in 2020.

15. Both DITTO and DYKES appeared to be under the influence. In fact, DYKES was administered Narcan at some point and both were taken to the Lake Cumberland Regional Hospital for treatment before being released to police custody on state charges.

16. In the interim, Det Nick Taylor of the SPD applied for and received a search warrant for DITTO's and DYKES's shared residence at 168 Hudson Road in Nancy, KY. The address is the location that DYKES had identified as her residence and where officers knew that DITTO had been staying. Officers executed the search warrant and located and seized approximately 10 grams of suspected meth, and drug paraphernalia, to include 11 loose baggies, 2 sets of digital scales, 1 white pill with markings consistent with oxycodone, a Schedule II

controlled substance, and 1 pill with markings consistent with alprazolam, a Schedule IV controlled substance.

17. Based on the information provided in this Affidavit, I assert that there is both reasonable and probable cause to believe that Joseph DITTO did knowingly and intentionally commit the crime of possession with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of this same drug trafficking offense, in violation of 18 U.S.C. § 924(c). I also assert that there is both reasonable and probable cause to believe that Nikka DYKES unlawfully possessed a firearm after having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

/s/ Hunter Nelson w.p.b. Hanly A. Ingram
_____
DEA TFO Hunter Nelson

Subscribed and sworn to remotely per Rule 4.1(b)(2)(A) on January 14, 2026.

_____
Honorable Hanly A. Ingram
United States Magistrate Judge
Eastern District of Kentucky